IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JESSE AARON CHANDLER,<br><br>Defendant. | **ORDER DENYING MOTION TO SUPPRESS**<br><br>Case No. 2:16-cr-00614-CW<br><br>Judge Clark Waddoups |

Defendant Jesse Aaron Chandler has filed a motion to suppress the evidence found during the search of the vehicle in this case. (Dkt. No. 22.) On February 9, 2017, the court held an evidentiary hearing on the motion. (*See* Dkt. No. 24.) After the evidentiary hearing, the parties submitted briefing in support of their positions. (Dkt. Nos. 31, 32 & 35.) On April 11, 2017, the court heard oral argument on the motion. Upon careful consideration of the record evidence, briefing, oral arguments, and relevant legal authorities, the court DENIES the motion to suppress.

## BACKGROUND

Trooper Wood stopped Mr. Chandler for speeding at approximately 4:45:22 on November 10, 2016. (Hrg. Tr. ("Tr.") at 16:20-23, Dkt. No. 33.) Trooper Wood explained the purpose of the stop and Mr. Chandler agreed he had been speeding. (*Id.* at 17:13-24.) Trooper Wood asked for his license and Mr. Chandler provided a Kansas identification card, later explaining that his license was suspended. (*Id.* at 18:1-11, 29:13-14.) Trooper Wood asked for the vehicle registration and Mr. Chandler informed him that the car was a rental vehicle rented by a "Lauren." (*Id.* at 18:13-25.) Viewing the rental contract, Trooper Wood saw the rental car was three days overdue and Mr. Chandler was not a registered driver on the contract. (*Id.* at 19:13-20:10.) At approximately

1

4:47:42, Trooper Wood invited Mr. Chandler back to the patrol car while Trooper Wood filled out the citation. (*Id.* at 20:20-25.) Mr. Chandler agreed. (*Id.*)

While writing the citation, Trooper Wood asked Mr. Chandler about his travel plans and arrest history. (*Id.* at 22-24.) Mr. Chandler disclosed that he had previously been arrested for a high speed chase and aggravated assault and that he was traveling from Las Vegas, though he was inconsistent in recounting how long he had been there. (*Id.* at 24:16-21, 25:15-19.) At approximately 4:52:08, Trooper Wood called for a records and driver's license check, and contacted dispatch for backup from another officer. (*Id.* at 26-27.) The second officer arrived at approximately 4:55:39, three minutes after Trooper Wood called for the backup. (*Id.* at 30:17-23.) During this time Trooper Wood continued filling out the citation and asking Mr. Chandler questions about the rental car, his criminal status, and his travel plans. (*Id.* at 27-30.) Trooper Wood discovered that Mr. Chandler was on parole and that he was traveling from Kansas to Las Vegas and back. (*Id.* at 30:3-14.)

At approximately 4:56:22—while the second officer was present and before the records check returned—Trooper Wood exited the patrol car to run his narcotics-detection dog around the vehicle. (*Id.* at 30:24-34:2; *see* Dkt. No. 25, Exs. 22-24 (training certifications for the dog and Trooper Wood).) At 4:56:38, the dog indicated at the front of the vehicle to the presence of a narcotics odor. (Tr. 34:4-19.) The records check returned approximately six or seven seconds before the dog indicated, though Trooper Wood told dispatch to stand by with the information while Mr. Chandler was within earshot. (*Id.* at 35:24-34:6.)

Approximately eleven minutes passed between the initial stop and the dog's indication. Trooper Wood estimated that, on average, he completes a normal traffic stop in ten to seventeen minutes. (*Id.* at 58:6-8.)

# ANALYSIS

"The Fourth Amendment . . . prohibits an unreasonable search or seizure. Since a traffic stop itself is a seizure, the Fourth Amendment requires the stop to be justified at its inception and reasonably limited in scope." *United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007) (citations omitted). "A justifiable stop must not exceed the reasonable duration required to complete the purpose of the stop." *Id.*

Here, the parties do not dispute that the traffic stop was justified at its inception: Mr. Chandler admitted to speeding. (Dkt. No. 31, p. 5.) Mr. Chandler argues, however, that Trooper Wood's conduct exceeded the reasonable scope of the stop and that Trooper Wood lacked reasonable suspicion to prolong the stop to conduct a canine sniff. (*Id.* at 5–9.)

**A. Trooper Wood's conduct did not exceed the reasonable scope of the traffic stop and did not prolong the stop.**

"A seizure for a traffic violation justifies a police investigation of that violation." *Rodriguez v. United States* ___ U.S. ___, 135 S. Ct. 1609, 1614, (2015). "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." *Id.* (citation omitted). Though an officer may not extend a traffic stop beyond the reasonable duration necessary to address its purpose, "an officer has wide discretion to take reasonable precautions to protect his safety" during the stop. *Rice*, 483 F.3d at 1083–84. An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, ask routine questions about the driver's travel plans, and issue a citation. *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005). In addition, "an officer may ask questions, whether or not related to the purpose of a traffic stop, if they do not excessively prolong the stop." *United States v. Simpson*, 609 F.3d 1140, 1146 n.1 (10th Cir. 2010). "Authority for the seizure . . . ends when

tasks tied to the traffic infraction are—or reasonably should have been—completed." *Rodriguez*, 135 S. Ct. at 1614.

The court finds that Trooper Wood's actions did not prolong or exceed the scope of the traffic stop. Viewing the circumstances of this case as a whole, Trooper Wood undertook ordinary, reasonable inquiries incident to the traffic stop. *See Rodriguez*, 135 S. Ct. at 1615. Trooper Wood testified that typical traffic stops take an average of ten to seventeen minutes, and Mr. Chandler presents no evidence to contradict the Trooper's testimony on this point. The overall duration of the stop here—eleven minutes—falls on the low end of Trooper Wood's estimate. Moreover, an eleven minute stop is reasonable under Tenth Circuit precedent. *See, e.g.*, *United States v. Kitchell*, 653 F.3d 1206, 1218 (10th Cir. 2011) (finding a twenty-two minute stop reasonable where officer (1) explained the reason for the stop, (2) obtained information from vehicle occupants, (3) examined and inquired as to the car rental agreement, and (4) requested and waited for a warrant check); *United States v. Briseno*, 163 F. App'x 658, 664 (10th Cir. 2006) (unpublished) (finding nineteen minutes reasonable to question the driver and passenger about their travel plans, check their license and registration, and run a computer check); *see also United States v. Shareef*, 100 F.3d 1491, 1501–02 (10th Cir. 1996) (holding that where police "computers used to verify license information were down or slow" and the driver was not carrying a license, "a detention of thirty minutes, given the totality of the circumstances . . . was reasonable").

**B. The canine sniff did not unconstitutionally prolong the stop.**

The court also finds the canine sniff did not measurably prolong the traffic stop. The Supreme Court has held that a certified-narcotics dog sniff of the exterior of a vehicle "during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Illinois v. Caballes*, 543 U.S. 405, 409 (2005). The Supreme Court also recognizes that "a dog sniff is not fairly characterized as part of the officer's traffic mission" of highway and officer safety, but rather is

4

aimed at detecting other criminal wrongdoing and drug crimes in particular. *Rodriguez*, 135 S. Ct. at 1615–16. The *Rodriguez* court clarified that an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop[,]" but "he may not do so in a way that prolongs the stop" unless there is "reasonable suspicion . . . to justify detaining [the] individual." *Id.* at 1615. "The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket, . . . but whether conducting the sniff 'prolongs'—i.e., adds time to—'the stop.'" *Id.* at 1616.

The court finds the facts of this case are directly in line with *Illinois v. Caballes*, 543 U.S. 405 (2005). In *Caballes*, an Illinois state trooper stopped the defendant for speeding and radioed the stop to the dispatcher. *Id.* at 406. An interdiction team trooper overheard the transmission and headed for the stop with a narcotics-detection dog. *Id.* When the interdiction officer arrived, the defendant was in the first trooper's vehicle and the trooper was in the process of writing a warning. *Id.* The interdiction officer walked his dog around respondent's car and the dog alerted at the trunk. *Id.* Upon searching the vehicle, the troopers found marijuana and arrested the defendant. *Id.* "The entire incident lasted less than 10 minutes." *Id.*

Here, as in *Caballes*, Trooper Wood pulled Mr. Chandler over for speeding, invited him back to the patrol car, and began the process of issuing a citation to Mr. Chandler. Approximately ten minutes pass and the backup officer arrives. Trooper Wood proceeds to conduct the canine sniff within seconds of the backup officer's arrival, before the records check returns, and while in the process of filling out the traffic citation. Mr. Chandler argues that Trooper Wood could have finished the citation by that time and that Trooper Wood was simply delaying until the second officer arrived in order to conduct the dog sniff. This argument overlooks the fact that the records check had not returned until after Trooper Wood exited the patrol car to conduct the dog sniff, as well as the uncontroverted evidence that this stop was well within the average window of traffic stops for Trooper Wood. Mr. Chandler also objects that the dog indicated six or seven seconds

5

*after* dispatch contacted Trooper Wood with the results of the records check. Though Trooper Wood asked dispatch to hold off on reporting the results, mere seconds passed from the dispatcher's contact to the dog's indication. On this record, the court finds the traffic stop was not measurably prolonged by these actions. Trooper Wood had not yet completed issuing the citation related to the traffic stop and did not have knowledge of the results of the records check before conducting the dog sniff.

The circumstances of Mr. Chandler's stop are different from the prolonged stop in *Rodriguez*, where the officer had already completed and issued the written warning and "seven or eight minutes had elapsed from the time [the officer] issued the written warning until the dog indicated the presence of drugs." 135 S. Ct. at 1613. This case is also distinct from *United States v. Lopez*, 849 F.3d 921 (10th Cir. 2017), where the Tenth Circuit found the officer had extended the traffic stop beyond its initial purpose without the defendants' consent. The officer in *Lopez* had issued a warning and walked away from the defendant's vehicle before turning around, asking more questions, and detaining the defendants for twenty minutes until a drug dog arrived. *Id.* at 925. In this case, Trooper Wood had not finished the traffic-related tasks of issuing the citation or receiving the records check prior to running the narcotics dog around the vehicle. The entire stop, from inception to indication, lasted eleven minutes. In this case, at least, the dog sniff did not measurably prolong the stop.

## CONCLUSION

In conclusion, Trooper Wood's actions did not exceed the scope and purpose of the traffic stop and neither Trooper Wood's actions nor the canine sniff prolonged the stop. Once the canine indicated on the vehicle's grill, probable cause existed for Trooper Wood to search the vehicle. *See United States v. Rosborough*, 366 F.3d 1145, 1152–53 (10th Cir. 2004).

The court **DENIES** Mr. Chandler's Motion to Suppress, (Dkt. No. 22).

DATED this 11th day of April, 2017.

BY THE COURT:

_____
Clark Waddoups
United States District Judge